OPINION
Michael A. Mills was charged with driving under the influence of alcohol. He was found guilty after a trial by jury, and the trial court disposed of the matter accordingly. Mills appeals and advances two assignments of error, the first of which is as follows:
 THE JURY'S VERDICT IN THE CASE AT HAND WAS CONTRARY TO THE WEIGHT AND/OR SUFFICIENCY OF THE EVIDENCE.
The State's case consisted of the testimony of Springfield Police Officers Jeffrey Rex Ashworth and David Emmel. Ashworth was the first to testify and stated that he and Emmel were working as partners on July 2, 2000. Around midnight, the officers observed a 1985 Mitsubishi automobile eastbound on John Street in Springfield. The automobile had one headlight out. Ashworth testified that he could hear music coming from the car from a distance of one hundred or more feet, and that the car had entered into a residential area. The officers did a U-turn to follow the Mitsubishi and stop it for the two violations they had observed: headlight out and loud noise.
The automobile made a right turn onto Wittenberg Boulevard and then another right turn into a private driveway where the driver cut the lights and the motor. Officer Ashworth approached the driver who turned out to be the appellant, Michael A. Mills, and Emmel approached the passenger. Ashworth observed two open Budweiser cans inside the automobile between the occupants. Ashworth testified that Mills' eyes were "glassy or glossy," that a strong odor of alcohol emitted from Mills, and that Mills' speech was slightly slurred. Ashworth testified that Mills' explanation that he had meant to turn around in the driveway didn't make sense because of the distance Mills had traveled into the driveway and the fact that he had cut the lights and motor. Mills was not "real sure of his steps" while exiting the vehicle although he was not stumbling. Ashworth observed a small bag of marijuana where the defendant had been standing after he had exited the car, but no arrest was made for marijuana possession because Ashworth had not seen it on Mills' person or otherwise in his possession. A decision was made to arrest Mills for driving under the influence of alcohol. Ashworth told Mills and the passenger that the car had to be moved, but did not tell Mills to move the car. Mills was taken to the Clark County Jail in the police cruiser for field testing. Ashworth testified that based on his experience, training, and observations of Mills at the scene of the traffic stop, it was his opinion that he was under the influence of alcohol.
En route to the Clark County Jail, the alcoholic odor in the cruiser was very apparent. At the Clark County Jail, Mills performed the balance test and his swaying during that test was very noticeable. Mills did not perform either the finger to nose test or the one-legged stand test because of what the officers believed was Mills' unwillingness to cooperate in the taking of those tests.
Ashworth testified that he explained the operation of the breathalyzer machine to Mills, and that he told Mills that properly blowing into the machine produces a steady sound whereas improper blowing into the machine produces a series of intermittent beeps. Mills said he understood the test instructions and consented to the test, but in Ashworth's opinion, based on his observations of Mills blowing into the machine, Mills refused to do the test properly. Ashworth testified that he allowed Mills two opportunities to properly blow into the breathalyzer. Ashworth testified that after observing Mills at the county jail, Mills' balance was still unsteady, and he was confident of his decision to arrest him for driving under the influence.
The testimony of Officer Emmel was largely corroborative of Ashworth's testimony. He explained the finger to nose test three times to Mills, and observed that Mills was unsteady on his feet. He testified that he told Mills two to three times how to blow into the machine, but that Mills never made a "good attempt" to do so. He also expressed his opinion that Mills was under the influence.
Mills elected not to take the stand. He did present one witness, his passenger, Byron Stevens. Stevens testified that he had known Mills for twenty to twenty-five years, that he had been with Mills during the five to six hours preceding the traffic stop, that the open beer can in the car was Mills' first beer during that five to six hour period, that he had seen Mills in the past when he had been alcohol-impaired, and that Mills was not alcohol-impaired when stopped.
In support of his first assignment of error, Mills argues that there is no evidence that he consumed more than part of one beer on the night in question. He points out that neither officer discussed with Mills how much alcohol he had consumed, that Officer Ashworth acknowledged that he could not tell how much a person had to drink simply by smelling the alcohol on that person's breath, and that the officers never obtained a breathalyzer reading on Mills. While it is true that Byron Stevens was the only witness to say how much beer Mills had consumed during that evening, that the officers did not know how much beer he had consumed, and that they had not obtained a breathalyzer reading, there was other evidence to support the verdict of the jury. There is no question that Mills was the operator of the vehicle, that he emitted an odor of alcohol, that he displayed many of the classic indicators of alcohol impairment, and that both officers opined that he was under the influence of alcohol.
Mills next argues that Officer Ashworth never offered an explanation as to what he did that constituted a refusal to take the breathalyzer test. Both officers testified to the effect that Mills failed to make a bona fide effort to provide a sufficient sample of breath for measurement by the breathalyzer. But regardless of whether the officers presented a satisfactory explanation of why they thought Mills had refused to take the test, the issue for the jury was not whether Mills had refused to take a breathalyzer test, but whether he had been driving under the influence of alcohol.
Mills finally argues that the jury should have accepted Byron Stevens' testimony that he was not impaired on the night in question rather than Officer Ashworth's opinion that he was impaired, given "Officer Ashworth's paranoid assumption that 99.8 percent of the individuals that he encountered on the job were intoxicated." The 99.8 percent figure was testified to by Officer Ashworth in the following exchange:
 Q. Approximately how often in the course of your career in the last four years do you come into contact with alcohol-impaired individuals? And I don't mean just those driving. Alcohol-impaired individuals for any circumstance that you're called on?
 A. I would say 99.8 percent of the time, and I would say about that many instances, it's all basically alcohol-related but on a nightly basis, to answer your question.
 Q. On a daily basis, OK. And during the course of your career as a police officer, have you had occasion to arrest other individuals for Operating a Motor Vehicle While Under the Influence of Alcohol?
A. Yes, ma'am, I have.
 Q. And approximately how many times prior to this arrest? What we're getting at here is your experience, Officer.
 A. I don't know an exact figure but over the course of my employment with the City of Springfield, I would have to say at least two dozen times.
It is not entirely clear to us exactly what Officer Ashworth was referring to when he provided the 99.8 percent figure, but in reading the entire exchange, it would appear that he did not have an inordinate number of DUI arrests in his four-year career with the Springfield Police Department. In any event, it was the province of the jury to determine whose opinion was more credible, that of Byron Stevens, Mills' longtime friend who opined that he was not impaired, or the opinions of Officers Ashworth and Emmel, who opined that Mills was under the influence.
We conclude from our review of the record that the verdict of the jury was supported by sufficient evidence and was not against the manifest weight of the evidence, that the jury did not lose its way, and that its verdict was not a miscarriage of justice. The first assignment of error is overruled.
 THE JURY'S VERDICT SHOULD BE OVERTURNED BECAUSE APPELLANT DID NOT HAVE EFFECTIVE ASSISTANCE OF COUNSEL.
In support of his second assignment of error, appellate counsel has attached Mills' personal affidavit detailing his claim of ineffective assistance of appellate counsel. Although we do not normally consider affidavits that attempt to supplement the trial record under the rule ofState v. Ishmail (1978), 58 Ohio St.2d 402, Mills' affidavit is actually a form — unorthodox to say the least — of appellate argument. As such, we will consider it while observing that counsel could have just as easily — and more properly — inserted Mills' contentions into his appellate brief.
Mills contends his trial counsel was ineffective in failing to elaborate sufficiently through direct or cross-examination the following:
 a. "(Mills) took the breathalyzer test five times but the test failed to register. . ."
Presumably, Mills contends that greater elaboration would have demonstrated mechanical malfunction rather than Mills' lack of cooperation. The testimony of the two officers was that Mills never properly blew into the breathalyzer so as to obtain a measurable sample. Only Mills himself could have provided contrary evidence and, as the State observes, Mills may have had good reasons for not testifying. Mills does not claim that he wanted to testify.
 b. "The arresting officer, Jeffrey Rex Ashworth, originally informed (Mills) that he could park the car in the street and he could walk home, and did not charge (Mills) with OMVI until finding marijuana lying in a nearby yard. (Appellant was not charged that night with any drug related offense)."
Presumably, Mills contends that if the evidence established that Officer Ashworth told Mills he could park the car and walk home, it would undermine his opinion that Mills was under the influence. However, this was not Ashworth's testimony. Again, only Mills and his passenger, Byron Stevens, could have supplied contrary evidence. Mills may have had good reason not to testify and there is no basis to even speculate that the passenger would have furnished contrary evidence. Indeed Stevens testified that he "didn't have occasion to hear anything that was said between (Mills) and the officers very well."
Presumably, Mills contends that if elaborated upon by defense counsel, the jury may have concluded that if the arrest followed finding the marijuana, it would have concluded that Mills was arrested for drug possession and not DUI. Although Officer Ashworth stated that finding the marijuana was one of several reasons for removing Mills from the scene of the stop for field testing, he testified that he had no basis to charge Mills with drug possession and did not do so. A fair reading of the testimony indicates that the decision to arrest Mills for DUI was made independently of the marijuana find, and it would be entirely speculative to conclude that further elaboration would have produced an acquittal.
 c. "Officer Ashworth told appellant that it did not appear that he was drunk and that he did not smell like alcohol."
This assertion is in direct contradiction to what Ashworth testified to. Again, Mills or his passenger would have had to supply contrary evidence. Mills chose not to testify, and there is no basis to speculate that the passenger, Byron Stevens, would have supplied contrary evidence as to what Ashworth may have said. Stevens did opine that Mills was not under the influence as part of his defense testimony.
 d. "Neither officer at the scene told (Mills') girlfriend when they called to tell her to pick up the car that (Mills) was being arrested for OMVI. (This was before the officers found the marijuana)."
Presumably, Mills contends that this conversation, if it took place, may have persuaded the jury that Mills was arrested for drug possession and not DUI. As the State observes, this alleged conversation cannot be squared with the statement attributed by Mills to Ashworth in b., supra. More importantly, if, as alleged, the call to the girlfriend occurred before the marijuana was found, it lends credence to the State's evidence that the decision to arrest Mills was based on the officers' belief that he had been driving under the influence.
Mills also contends that his counsel should have asked his passenger, Byron Stevens, more questions about the evening in question rather than primarily inquiring about his credibility. Trial counsel asked no questions about Mills' credibility because Mills, having not taken the stand, had no credibility to bolster.
We see no deficiency in trial counsel's interrogation of Stevens. Counsel elicited that Stevens had known Mills for 20-25 years, that he had been with Mills five to six hours preceding the traffic stop, that the open beer can in the car was Mills' first beer during that five to six-hour period, that Stevens has seen Mills in the past when he has been alcohol-impaired, and that Mills was not alcohol-impaired when stopped. Absent any insight from Mills as to where the interrogation was lacking, we perceive no ineffectiveness of counsel, either in his interrogation of Stevens or in any other respect.
The second assignment is overruled.
The judgment will be affirmed.
FAIN, J. and YOUNG, J., concur.